UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STAFFORD LEE GILL,

       Petitioner,

                              CASE NO. 05-CV-70767-DT
  v.                         JUDGE NANCY G. EDMUNDS
                              MAGISTRATE JUDGE PAUL J. KOMIVES
JOHN CASON,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     E.    *Fourth Amendment Claims (Claims I and V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     F.    *Sufficiency of the Evidence Claim (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     G.    *Evidentiary Claims (Claims III & IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
          2.     *Expert Testimony of Officer Krupa (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . 15
          3.     *Testimony Regarding Petitioner's Statement (Claim IV)* . . . . . . . . . . . . . . . . . . . . 15
     H.    *Ineffective Assistance of Counsel Claims (Claims III, IV, and VI)* . . . . . . . . . . . . . . . . . . . . . 16
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
               a. Failure to Raise Evidentiary Objections (Claims III & IV) . . . . . . . . . . . . . . . . . . 18
               b. Failure to Challenge Validity of Search Warrant (Claim VI) . . . . . . . . . . . . . . . . . 18
     I.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Stafford Lee Gill is a state prisoner, currently confined at the Muskegon Correctional Facility in Muskegon, Michigan.

2.      On May 20, 1999, petitioner was convicted of one count of possession with intent to deliver over 650 grams of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(I); and one count of conspiracy to possess with intent to deliver over 650 grams of cocaine, MICH. COMP. LAWS §§ 333.7401(2)(a)(I), 750.157a, following a jury trial in the Oakland County Circuit Court.  On June 9, 1999, he was sentenced to two concurrent mandatory terms of life imprisonment.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      MR. GILL'S CONSTITUTIONAL RIGHT TO BE FREE FROM UNREASONABLE SEARCHES WAS VIOLATED BY THE ADMISSION OF EVIDENCE DISCOVERED PURSUANT TO THE INITIAL SEARCH WARRANT, BECAUSE THE AFFIDAVIT FOR THAT SEARCH WARRANT DID NOT PROVIDE PROBABLE CAUSE THAT THE EVIDENCE PERTAINING TO DRUG DELIVERY WOULD BE FOUND INSIDE THE RESIDENCE FOUR WEEKS AFTER A CONFIDENTIAL INFORMANT MADE A SINGLE PURCHASE OF COCAINE FROM A BLACK FEMALE WHO CAME OUT OF THE HOUSE AND SOLD THE INFORMANT DRUGS OUTSIDE, IN THE ABSENCE OF ANY OTHER RELIABLE INFORMATION SHOWING THAT DRUG DEALING WAS A CONTINUING OPERATION AT THAT HOUSE.

II.     MR. GILL'S CONVICTION FOR CONSPIRACY (WITH ANDRE WELLONS) TO POSSESS WITH INTENT TO DELIVER OVER 650 GRAMS OF COCAINE MUST BE REVERSED, WHERE THE EVIDENCE WAS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT ANDRE WELLONS AGREED WITH MR.

GILL TO COMBINE TO DELIVER OVER 650 GRAMS OF COCAINE.

III.     MR. GILL WAS DENIED HIS DUE PROCESS RIGHT [TO] A FAIR TRIAL AND/OR EFFECTIVE ASSISTANCE OF COUNSEL WHERE THE PROSECUTOR IMPROPERLY BOLSTERED ITS CASE BY INTRODUCING IMPROPER "EXPERT" OPINION TESTIMONY BY A POLICE OFFICER THAT THE HOUSE WAS BEING USED AS A "STASH HOUSE" BY MR. GILL.

IV.     MR. GILL WAS DENIED DUE PROCESS OF LAW AND/OR EFFECTIVE ASSISTANCE OF COUNSEL WHERE THE OFFICER WHO TOOK MR. GILL'S STATEMENT PRESENTED HIS OWN "EDITORIALIZED VERSION" OF THE STATEMENT, RATHER THAN THE ACTUAL STATEMENT ITSELF.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

See People v. Gill, No. 220261, 2001 WL 824447 (Mich. Ct. App. July 20, 2001) (per curiam).

4.     Petitioner, through counsel, sought leave to appeal these issues to the Michigan Supreme Court. Petitioner also filed a *pro se* supplemental brief, raising the following additional claim:

THE INFORMATION, ALLEGATIONS, AND FACTS WORDED IN THE AFFIDAVIT TO THE SEARCH WARRANT FOR 321 W. HOPKINS, CONCERNING THIS DEFENDANT AND HIS ASSOCIATION AND INVOLVEMENT WITH THE RESIDENCE, DID NOT MEET THE PROBABLE CAUSE DETERMINATION THAT THE PROPERTY SOUGHT TO BE SEIZED AT THE RESIDENCE WAS REASONABLY KNOWN TO BE ON THIS PARTICULAR PROPERTY AT THE TIME OF THE ISSUANCE OF THE WARRANT, THEREFORE THE SEARCH WARRANT WAS ILLEGALLY ISSUED IN VIOLATION OF DEFENDANT'S 4TH AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION AND THE MICHIGAN CONSTITUTION OF 1963 ARTICLE 1, SECTION 11, AGAINST UNREASONABLE SEARCHES AND SEIZURES.

As part of this claim, petitioner also contended that trial and appellate counsel were ineffective for failing to raise the claim. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Gill*, 465 Mich. 953, 640 N.W.2d 873 (2002).

3

5.      Petitioner thereafter filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the claim asserted in his *pro se* supplemental brief in the Michigan Supreme Court.  Petitioner's motion was denied by the trial court, and both the Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal.  *See People v. Gill*, No. 252633 (Mich. Ct. App. Apr. 29, 2004); *People v. Gill*, 471 Mich. 947, 690 N.W.2d 108 (2004).

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on March 1, 2005.  Although worded and numbered somewhat differently, petitioner raises the claims he raised in the state courts as grounds for the writ.

7.      Respondent filed his answer on September 9, 2005.  He contends that petitioner's first and fifth claims are not cognizable, that petitioner's second claim is without merit, and that petitioner's third through sixth claims are barred by petitioner's procedural default in the state courts.

8.      Petitioner filed a reply to respondent's answer on October 26, 2005.

B.      *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was accurately summarized by the Michigan Court of Appeals:

> The police executed a search warrant at 321 West Hopkins in the City of Pontiac.  The subject of the warrant was documents and records related to drug trafficking.  The police found defendant sitting at a kitchen table with Andre Wellons packaging crack cocaine.  The police confiscated 111.68 grams of cocaine, and defendant was arrested.  Although he did not own the house that was searched, the police found utility bills for that address in defendant's name.  Based upon their observations of the cocaine at the kitchen table in plain view, the police sought and obtained a second search warrant for controlled substances.  The police found a plastic box containing 631.10 grams of powder cocaine on a shelf in an open bedroom closet.  Defendant's thumbprint was taken from the top of the container.

4

> Defendant's challenges to the validity of the initial search warrant were rejected by the trial court, and the jury found defendant guilty of possession with intent to deliver both the crack cocaine at the kitchen table and the powder cocaine from the bedroom closet.

*Gill*, 2001 WL 824447, at *1, slip op. at 1.

C.    *Procedural Default*

Respondent first contends that petitioner's third through sixth claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal.  The Court should disagree.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Even assuming that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits.  As noted above, petitioner can still have his defaulted claims

5

reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. With respect to each of the allegedly defaulted claims, petitioner contends that either his trial or appellate counsel was ineffective for failing to raise the claim at the appropriate time. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). An analysis of the ineffective assistance issue necessarily entails an examination of the merits of the claims asserted by petitioner. Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>      (2) resulted in a decision that was based on an unreasonable determination

6

of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court

7

decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Fourth Amendment Claims (Claims I and V)*

Petitioner first raises two claims based on his Fourth Amendment right to be free from unreasonable searches and seizures.  In his first claim, petitioner contends that the initial search warrant did not establish probable cause to believe that evidence of drug trafficking would be found at the house four weeks after a single purchase of cocaine had been made outside the home by a confidential informant.  In his fifth claim, petitioner contends that the information in the affidavit supporting the warrant was false, misleading, and based on uncorroborated statements of an informant.  The Court should conclude that petitioner is not entitled to relief on these claims,

because they are not cognizable on habeas review.

Because "the exclusion of illegally seized evidence is simply a prophylactic device intended to deter Fourth Amendment violations by law enforcement officers," *Kaufman v. United States*, 394 U.S. 217, 224 (1969), the Supreme Court has determined that

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also, Cardwell v. Taylor*, 461 U.S. 571, 571-72 (1983) (per curiam).  Thus, petitioner's claim is not cognizable on habeas review if he had an adequate opportunity to present his claim to the state courts.  "For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985); *see also, Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *Willett v. Lockhart*, 37 F.3d 1271-72 (8th Cir. 1994).  The requirement that there be, in the abstract, a mechanism by which to raise the Fourth Amendment claim "is met when state procedures provide a meaningful vehicle for a prisoner to raise a fourth amendment claim." *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985).  Michigan provides such a mechanism to raise and litigate Fourth Amendment claims, and there is no evidence that this mechanism was not available to petitioner in the state courts. *See Markham v. Smith*, 10 Fed. Appx. 323, 327 (6th Cir. 2001); *Machacek*, 213 F.3d at 952.

Petitioner's argument that the Michigan Court of Appeals did not properly analyze the facts and erroneously decided the Fourth Amendment issue does not alter this conclusion.  The courts that have considered the matter "have consistently held that an erroneous determination of a habeas

petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar." *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986); *see also*, *Willett*, 37 F.3d at 1270 (citing cases). Here, petitioner's "argument goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant." *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

F.     *Sufficiency of the Evidence Claim (Claim II)*

Petitioner next contends that the evidence was insufficient to sustain his conviction on the conspiracy charge. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). However, under the amended version of

§ 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision.  Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under Michigan law any person who conspires with one or more other persons to commit an offense prohibited by law is guilty of the crime of conspiracy, and, in the case of felonies, is punished to the extent he would be punished if found guilty of the underlying substantive offense. *See* MICH. COMP. LAWS § 750.157a(a).  Under Michigan law,

> [c]riminal conspiracy is a mutual understanding or agreement between two or more persons, expressed or implied, to do or accomplish some criminal or unlawful act.
>   The gist of the offense lies in the unlawful agreement between two or more persons to do the unlawful act.  All the requisite elements of the crime of conspiracy are met when the parties enter into the mutual agreement, and no overt acts necessarily must be established.

*People v. Hamp*, 110 Mich. App. 92, 102, 312 N.W.2d 175, 180 (1981) (citations omitted); *see also*, *People v. Buck*, 197 Mich. App. 404, 412, 496 N.W.2d 321, 327 (1992), *rev'd in part on other grounds sub nom. People v. Holcomb*, 444 Mich. 853, 508 N.W.2d 502 (1993).  Thus, "[t]o be

11

convicted of conspiracy to possess with intent to deliver a controlled substance, the people must prove that (1) the defendant possessed the specific intent to deliver the statutory minimum as charged, (2) his coconspirators possessed the specific intent to deliver the statutory minimum as charged, and (3) the defendant and his coconspirators possessed the specific intent to combine to deliver the statutory minimum as charged to a third person." *People v. Justice*, 454 Mich. 334, 349, 562 N.W.2d 652, 659 (1997). However, "direct proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties. Inferences may be made because such evidence sheds light on the coconspirators' intentions." *Id*. at 347, 562 N.W.2d at 659 (citation omitted).

      2.     *Analysis*

Petitioner contends, as he did in the state courts, that there was insufficient evidence presented to show that his coconspirator, Andre Wellons, specifically intended to deliver, and agreed with petitioner to combine to deliver, over 650 grams of cocaine. Petitioner argues that there was no evidence linking Wellons to the powder cocaine found in the bedroom, and without such evidence or any other evidence of an agreement to distribute this cocaine, his conspiracy conviction cannot stand. The Michigan Court of Appeals rejected this claim. The court of appeals first explained that "[b]ased on the observations of the police and defendant's statement to the police, the evidence showed that the defendant and Wellons conspired to possess and deliver the crack cocaine found in the kitchen which they were packaging for sale." *Gill*, 2001 WL 824447, at *2, slip op. at 2-3. The court further concluded that there was sufficient evidence connecting the crack cocaine to the powder cocaine found in the bedroom for the jury to infer that the powder cocaine was part of the conspiracy between petitioner and Wellons. Specifically, the court noted,

12

Police Officer Mark Giroux described the process by which powder cocaine is made into crack cocaine. Defendant told police that he brought cocaine to the house to prepare it for sale. Defendant did not reside at 321 W. Hopkins, yet the plastic container containing the powder cocaine in the bedroom had defendant's thumbprint on it. Further the police did not find any powder cocaine in the kitchen area. All of the cocaine in the kitchen was hard, crack cocaine. From this evidence, the jury could reasonably conclude that the crack cocaine in the kitchen which defendant and Wellons were packaging for sale was made from the powder cocaine found in the bedroom which defendant brought into the house. In addition, the evidence showed that the house was owned by Connie Wellons, Andre Wellons' mother, and also that items of correspondence bearing Andre's name were found in the house. Accordingly, the prosecution presented sufficient evidence that defendant and Wellons conspired to possess and deliver the cocaine found in the bedroom.

*Id*. at *2, slip op. at 3. The Court should conclude that this determination was reasonable.

Although there was no direct evidence of an agreement between petitioner and Wellons to distribute the cocaine found in the bedroom, there was sufficient circumstantial evidence for the jury to reach this conclusion. As the court of appeals noted, there is no question that there was sufficient evidence to show that petitioner and Wellons conspired to distribute the crack cocaine which they were packaging at the time the police arrived at the house. Starting from this premise, the jury could conclude that the cocaine in the bedroom was part of the conspiracy given: (1) the testimony about how crack cocaine is made from powder cocaine; (2) the absence of any powder cocaine in the kitchen with the finished crack cocaine; and (3) Wellons's additional ties to the house where the cocaine was found. In light of this evidence, the Michigan Court of Appeals did not unreasonably apply *Jackson* in concluding that the evidence was sufficient to show a conspiracy between petitioner and Wellons to distribute the cocaine found in the bedroom. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this ground.

G.    *Evidentiary Claims (Claims III & IV)*

Petitioner next contends that he was denied a fair trial by the admission of Officer Matthew

13

Krupa's expert testimony that the house at 321 W. Hopkins was being used as a "stash house."  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

    1.    *Clearly Established Law*

Unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution."  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994); *see also, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy."  *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and

14

the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

      2.    *Expert Testimony of Officer Krupa (Claim III)*

      At trial, Officer Krupa was qualified by the trial court as an expert in drug-related law enforcement. *See* Trial Tr., Vol. II, at 153. Officer Krupa testified that, based on petitioner's statement, the items found in the house, and his experience, 321 W. Hopkins was being used as a "stash house" to process and distribute cocaine. *See id*. at 157-58. On appeal, the Michigan Court of Appeals concluded that the admission of this testimony was error. Nonetheless, the court concluded that the error was harmless "in light of the other evidence that defendant stored, processed and packaged cocaine at that address." *Gill*, 2001 WL 824447, at *3, slip op. at 3. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      As noted above, the question here is not whether the admission of this evidence was improper under state law. Rather, the only question is whether the admission of Officer Krupa's testimony denied petitioner a fair trial. As the court of appeals explained, the admission of this evidence was harmless, and thus petitioner cannot show that he was denied a fair trial. Officer Krupa's testimony was nothing more than a common sense conclusion from the evidence which the jury likely would have drawn on its own. The testimony and evidence clearly showed that a large quantity of cocaine was being stored in the house, and that the cocaine was being prepared for distribution by petitioner and Wellons when the police arrived. In light of this evidence, Officer Krupa's characterization added nothing that the jury did not already know. Thus, the admission of the evidence was harmless, *cf. United States v. Mitchell*, 104 Fed. Appx. 544, 551-52 (6th Cir. 2004), and petitioner is not entitled to habeas relief on this claim.

3.    *Testimony Regarding Petitioner's Statement (Claim IV)*

Petitioner next contends that he was denied a fair trial by the testimony of Deputy Brent Miles regarding petitioner's statement to the police. Miles testified partly by providing petitioner's actual statements, and partly by providing a summary account of petitioner's statements. Petitioner contends that counsel should have objected to Deputy Miles's "editorializing" of petitioner's statements. The Michigan Court of Appeals rejected this claim, explaining that "the record does not suggest that [Miles] was distorting defendant's statement." *Gill*, 2001 WL 824447, at *3, slip op. at 4. The Court should conclude that this determination was reasonable.

Although petitioner objects to the "editorializing" of his statement, he nowhere suggests, much less demonstrates, that Officer Miles's testimony mischaracterized the substance of his statement to the police. While Officer Miles did offer his thoughts as to what petitioner meant by certain ambiguous statements, such testimony from a police officer based on the officer's experience is generally not impermissible. *Cf. United States v. Chambers*, 137 Fed. Appx. 253, 258 (11th Cir. 2005). Petitioner has not shown that Officer Miles's summary of his statements were inaccurate or otherwise deprived petitioner of a fair trial. *See Porter v. Estelle*, 709 F.2d 944, 958 (5th Cir. 1983). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.    *Ineffective Assistance of Counsel Claims (Claims III, IV, and VI)*

Petitioner next contends that he was denied the effective assistance of counsel in a number of respects. Specifically, he contends that his trial counsel was ineffective for: (1) failing to object to Officer Krupa's expert testimony; (2) failing to object to Deputy Brent Miles's testimony regarding petitioner's statements; and (3) failing to challenge the validity of the search warrant. Petitioner also contends that appellate counsel was ineffective for failing to challenge the validity

16

of the search warrant on direct appeal.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *See id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See id*.  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would

17

have had a reasonable doubt respecting guilt." *Id.* at 695.

    2.    *Analysis*

    *a.  Failure to Raise Evidentiary Objections (Claims III & IV)*

Petitioner first contends that his trial counsel was ineffective for failing to object to Officer Krupa's expert testimony that the house at 321 W. Hopkins was being used by petitioner as a "stash house."  As explained above, however, any error in the admission of this testimony was harmless. "[B]ecause it was harmless error, [petitioner] cannot demonstrate prejudice and, therefore, cannot meet *Strickland*'s second prong."  *Owens v. United States*, 236 F. Supp. 2d 122, 148 (D. Mass. 2002); *see also*, *Williams v. Calderon*, 48 F. Supp. 2d 979, 1013 (C.D. Cal. 1998), *aff'd in part, vacated in part on other grounds sub nom. Williams v. Woodford*, 384 F.3d 567 (9th Cir. 2004). Similarly, because petitioner has failed to show any prejudice resulting from Officer Miles's testimony regarding his statement, he cannot show that counsel was ineffective for failing to raise an objection to this testimony.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

    *b.  Failure to Challenge Validity of Search Warrant (Claim VI)*

Finally, petitioner contends that both his trial and appellate counsel were ineffective for failing to challenge the validity of the search warrant in a proper way.  Prior to trial, counsel filed a motion to suppress on the basis that the information in the warrant was stale.  After that motion was denied, counsel filed a second motion to suppress, arguing that the affidavit in support of the warrant contained material misstatements of fact.  The prosecutor filed a response which included the affidavit of the officer who filed the search warrant application.  Based on that affidavit, the trial court denied petitioner's second motion to suppress without holding an evidentiary hearing.

18

Petitioner now contends that, had counsel raised the proper facts and grounds in support of his motion, he would have received an evidentiary hearing and succeeded on his motion. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Although *Stone v. Powell*, *supra*, bars litigation of a Fourth Amendment claim on habeas review, a Sixth Amendment claim of ineffective assistance of counsel based on counsel's failure to properly present a Fourth Amendment claim is distinct, and is cognizable on habeas review under the standard set forth in *Strickland*. *See Kimmelman v. Morrison*, 477 U.S. 365, 374-75 (1986). More particularly, the Supreme Court set forth the standard for demonstrating *Strickland*-type prejudice in a case of this sort in *Kimmelman*: "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman*, 477 U.S. at 375.

Petitioner takes issue with two averments in the affidavit supporting the search warrant, which went unchallenged by his counsel. First, the attesting officer averred:

> That affiant reviewed Michigan Police Intelligence Report #2090-97, dated March 25, 1997, wherein an anonymous source stated that Stafford Lee Gill, black male, approximately 50 years of age, was selling cocaine from his residence at 321 W. Hopkins, city of Pontiac."

Search Warrant Aff., ¶ 3(A)(1) [attached as Exhibit A to petitioner's brief on direct appeal to the Michigan Court of Appeals]. Petitioner contends that this statement was false, because the police knew that he resided at 18 Jefferson Street in Pontiac. The Court should conclude that petitioner cannot establish a viable Fourth Amendment claim on the basis of this averment.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Court held that where a defendant shows

by a preponderance of the evidence that "a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the . . . false statement is necessary to the finding of probable cause, . . . the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 155-56. Thus, to establish a claim under *Franks* a defendant must establish three elements: "(1) a factual statement made in an affidavit supporting a warrant is false; (2) the affiant made the false statement 'knowingly and intentionally or with reckless disregard for the truth'; and (3) without the false statements, the remainder of the affidavit is insufficient to establish probable cause." *Delta Eng'g v. United States*, 41 F.3d 259, 262 (6th Cir. 1994). Importantly, to satisfy the second element it is not sufficient that the affiant make a negligent misstatement; to establish a *Franks* violation petitioner must show that the omission was either deliberate or reckless. *See Atkin*, 107 F.3d at 1217; *United States v. Reivich*, 793 F.3d 957, 960 (8th Cir. 1986). *See generally*, *Franks*, 438 U.S. at 171. Where the first two elements are shown, the third element of the *Franks* test requires the reviewing court to view the affidavit as if the false statements were not included. If the affidavit, so read, nevertheless establishes probable cause for a search, the petitioner's *Franks* claim fails. *See United States v. Keszthelyi*, 308 F.3d 557, 566-67 (6th Cir. 2002); *United States v. Graham*, 275 F.3d 490, 506-07 (6th Cir. 2001). *See generally*, *Franks*, 438 U.S. at 171-72.

Here, petitioner has offered nothing to show that Officer Krupa's averment that he resided at 321 W. Hopkins, even if false, was knowingly false as opposed to merely negligently false. More importantly, even assuming that a *Franks* violation occurred, the affidavit establishes probable cause even without the allegedly false information. Under petitioner's own argument, the only portion of

20

¶ 3(E)(1) that was false was the statement that he resided at 321 W. Hopkins.  The rest of the averment–*i.e.*, that the State Police intelligence report showed that petitioner had sold cocaine from that location–is unchallenged.  The rest of the affidavit provides information about the confidential informant's tip, the officer's observations of the location, and the result of a controlled buy observed by the officer.  These facts, taken together, established probable cause even if the affidavit falsely claimed that petitioner actually lived at the location from which the cocaine was being sold.  *See United States v. McKinney*, 143 F.3d 325, 329 (7th Cir. 1998) (informant's tip and observation of controlled buy established probable cause); *United States v. Khounsavanh*, 113 F.3d 279, 285-86 (1st Cir. 1997) (same).  Thus, petitioner cannot show that any Fourth Amendment claim based on this alleged inaccuracy would have succeeded, and he therefore cannot show that counsel was ineffective under the *Kimmelman* standard.

The second portion of the affidavit attacked by petitioner avers:

That affiant received information from CI #10079 on December 29, 1997, that cocaine could be purchased from Stafford Lee Gill, via his pager number 823-2014, and various individuals in the employ of Stafford Lee Gill.  Further, CI #10079 stated that Stafford Lee Gill used 321 W. Hopkins, City of Pontiac, to keep and sell cocaine.

Search Warrant Aff., ¶ 3(E)(2).  Based on this averment, petitioner contends that the warrant was insufficient to establish probable cause because it was based on the sparse and uncorroborated tip of an anonymous source.  The Court should disagree.

It is true that "an affidavit based solely on the hearsay report of an unidentified informant must set forth 'some underlying circumstances from which the officer concluded that the informant . . . was credible or his information reliable.'" *United States v. Harris*, 403 U.S. 573, 576 (1971) (quoting *Aguilar v. Texas*, 378 U.S. 108, 114 (1964)).  Here, however, the affidavit did so.

21

Specifically, Officer Krupa averred that he believed the confidential informant because the informant (a) was acting voluntarily, (b) followed all instructions he was given, (c) appeared credible, (d) provided information about his own involvement in illegal narcotics which was against his penal interest, and (e) provided information in the past which led to narcotics arrests. *See* Search Warrant Aff., ¶ 3(E)(6). In addition, the confidential informant made a controlled buy of cocaine which corroborated the information he had given to the police. In these circumstances, the affidavit provided sufficient corroborative detail to support the confidential informant's credibility. The information provided by the informant, coupled with the officer's averments regarding the informant's credibility and the controlled buy, provided sufficient probable cause to support the warrant. *See United States v. Harris*, 255 F.3d 288, 292-93 (6th Cir. 2001); *McKinney*, 143 F.3d at 329 ("Controlled buys add great weight to an informant's tip."). Thus, petitioner cannot show that a motion to suppress argued on this basis would have been successful, and he therefore cannot show that he was prejudiced by trial counsel's failure to file such a motion or appellate counsel's failure to raise this claim on appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C.

§ 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver

of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of*

*Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th

Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will

not preserve all the objections a party might have to this Report and Recommendation.  *See Willis*

*v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit*

*Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR

72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing

party may file a response.  The response shall be not more than five (5) pages in length unless by

motion and order such page limit is extended by the Court.  The response shall address specifically,

and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 1/27/06


| The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on January 27, 2006.

                                        s/Eddrey Butts
                                        Case Manager |